IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JAMES WATT                                                                                                    PLAINTIFF

V.                                              CASE NO. 05-CV-1084

GEORGIA-PACIFIC CORPORATION
and PACE LOCAL 5-0369 S                                                                              DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Separate Defendant PACE Local 5-0369 S's ("PACE") Motion for Summary Judgment. (Doc. 17). Plaintiff James Watt has responded. (Doc. 22-1). PACE has replied to Watt's response. (Doc. 23). The Court finds the matter ripe for consideration.

At the outset, it should be noted that only PACE has moved for summary judgment. Therefore, the Court will focus on the role of PACE in the case in deciding the instant motion.

### I. BACKGROUND

On September 12, 2005, Watt brought this lawsuit against PACE, the local branch of Paper, Allied Industrial, Chemical and Energy Workers International Union, alleging that PACE did not pursue a grievance on Watt's behalf as provided by the Labor Agreement. Watt alleges that PACE denied him fair representation and that he is entitled to recover damages from PACE. Watt also brought suit against Georgia-Pacific Corporation ("GP"), alleging that he was wrongfully discharged from his employment in violation of the Fair Labor Standards Act, the Americans with Disabilities Act, and the Arkansas Civil Rights Act and that his termination violated the Collective Bargaining Agreement in place between GP and PACE.

Watt was employed by GP as a "beater" engineer at GP's facility in Crossett, Arkansas. He began his employment with GP in 1991. Watt joined PACE, known at the time as the Paper

Worker's Union, a "few years" after he began working at GP. Watt was terminated from his employment on March 13, 2005.

According to Watt, he testified in a 2004 criminal proceeding involving two GP employees. Watt testified that his testimony was not favorable to the company; specifically, the testimony did not support James Coody, an employee involved in the 2004 criminal proceeding, who was a friend of Watt's supervisor. Watt asserts that his supervisor, in retaliation for Watt's unfavorable testimony, assigned him extra duties that he could not perform because of his back problems.

Watt stated that he spoke with a union shop-steward about his (Watt's) supervisor and that this steward filed several grievances before September 2004, complaining about the supervisor's conduct. In approximately late August or early September 2004, Watt's supervisor told him to go under a machine to pick up towel waste. According to Watt, he could not do that because it jarred his back. Watt testified that his supervisor told him to go under the machine or he would be fired. Later that same day, Stacey Campbell, a company supervisor, found Watt lying on the floor of Campbell's office because Watt's back hurt. Watt told Campbell that he could not do what his supervisor had told him to do, and Campbell advised Watt to go home so that he could take his narcotic pain pill for his back.

Two days later, Campbell informed Watt that he could not return to work until he produced a letter from a doctor allowing Watt to perform work at GP with no restrictions. Watt returned with a doctor's note stating that he could return to work with no restrictions. GP then sent Watt to Ashley Rehabilitation to obtain a functional capacity exam ("FCE"). According to Watt, he was not to return to work until GP obtained the FCE report. The FCE report indicated

that Watt could only perform light-medium work, not the medium-heavy to heavy work that his present job required.

Shortly thereafter, Watt attended a meeting with Mr. Rice, a PACE vice-president; Tony Brockwell, another "beater" engineer and a PACE shop-steward; and Alan Carmical, a GP human resources representative. Carmical told Watt that he could not come back to work because his back "was in too bad a shape." (Watt Depo. p. 34). Watt started receiving "sick leave" or "company disability" after September 2004. Watt has not worked since August 20, 2004, and he was terminated in March 2005.

Watt stated in his deposition that following the September 2004 meeting with Rice, Carmical, and Brockwell, Watt asked Rice, a PACE vice-president, "What can I do now?" According to Watt, Rice stated that there was nothing else PACE could do. Watt testified that he relied on this statement from Rice and that Watt did not do anything else about his grievance, including taking steps to file a grievance against GP. Watt did not contact PACE or attend a PACE meeting after September 2004. Watt did not ask the PACE membership to vote to arbitrate a grievance regarding GP's decision to put him on leave and the circumstances leading to his termination. Watt never filed an Equal Employment Opportunity Commission complaint against PACE.

## II. STANDARD OF REVIEW

The standard of review for summary judgment is well established. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Genuine issues of material fact exist where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Where no reasonable jury could render a verdict for the plaintiff, however, summary judgment is properly granted to a defendant. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).

### III. DISCUSSION

PACE asserts that it is entitled to summary judgment because Watt's claim against PACE is barred by the statute of limitations. Watt's claim that pertains to PACE is a hybrid claim under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, against GP for the breach of the collective bargaining agreement and against PACE for breach of the duty of fair representation. This hybrid claim is governed by the six-month statute of limitations set forth by the United States Supreme Court in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed. 476 (1983). *Scott v. United Automobile*, 242 F.3d 837, 839 (8th Cir. 2001). The statute of limitations begins to run when the employee knows or reasonably should know that the union has breached its duty of fair representation. *Schuver v. MidAmerican*

*Engery Company*, 154 F.3d 795, 800 (8th Cir. 1998); *see Scott*, 242 F.3d at 839 (citing *Evans v. Northwest Airlines, Inc.*, 29 F.3d 438, 441 (8th Cir. 1994)).

Here, both parties are correct in stating that the issue is when Watt's cause of action accrued. Watt cites a case from the Third Circuit that states that the cause of action accrues "when the victim of an unfair labor practice receives unequivocal notice of a final adverse decision." *National Labor Relations Board v. Public Service Electric and Gas Company*, 157 F.3d 222, 227 (3rd Cir. 1998). Thus, Watt argues that the cause of action in the present case began to accrue when Watt received notice of his termination from GP on March 13, 2005. Watt's reliance on the *National Labor Relations Board* case is misplaced, because the Eighth Circuit has never required that the union give the employee unequivocal notice before the employee's cause of action begins to accrue. *See Livingstone v. Schnuck Maket, Inc.*, 950 F.2d 579, 583 (8th Cir. 1991).

Under Eighth Circuit authority, an employee's cause of action against the employer and the union begins to accrue when the union decides not to pursue the employee's grievance. *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983). Thus, the claim accrues "when the claimant discovers, or in the exercise of reasonable diligence, should have discovered, the acts constituting the alleged violation." *Schuver*, 154 F.3d at 800. The key inquiry in this type of case is what the employee knew or reasonably should have known about the union's decision to pursue the grievance. *See Scott*, 242 F.3d at 840. Here, the statute of limitations began to run when Watt knew or should have known that PACE would not pursue Watt's grievance. The record indicates that Watt had the requisite knowledge in September 2004.

In his deposition, Watt stated that, after the meeting in September 2004[1] when he was told that he could not come back to work because of his back, he asked Rice, "What can I do now?" (Watt Depo. pp. 38). Rice replied that there was nothing else that PACE could do. (Watt Depo. pp. 38, 45). Watt admitted that he relied on Rice's statement that PACE could do nothing else for Watt, and Watt did nothing else about his grievance with GP. (Watt Depo. pp. 41-42, 45, 46). Watt never requested that PACE file a grievance against GP. (Watt Depo. p. 45).

When Rice told Watt that there was nothing more that PACE could do about Watt's grievance, Watt knew or reasonably should have known that PACE had decided not to pursue any grievances on Watt's behalf. This is when PACE allegedly breached its duty of fair representation. Thus, the statute of limitations began to run in September 2004, when Rice informed Watt that there was nothing that PACE could do and Watt reasonably should have known that PACE would not be pursuing his grievance. Watt offers no proof to rebut the fact that he knew or reasonably should have known in September 2004, that PACE would not be pursuing a grievance on his behalf. Six months from September would be March 2005. Watt filed his complaint against PACE and GP on September 12, 2005. Watt's breach of the duty of fair representation claim against PACE , therefore, is barred by the six-month statute of limitations.

Viewing all the evidence in a light most favorable to Watt, this Court finds that there is no genuine issue as to any material fact in this case as it pertains to PACE, and PACE has shown that it is entitled to judgment as a matter of law on Watt's breach of the duty of fair representation claim, which Watt concedes is the only claim it has filed against PACE.

---

[1] The exact date of this meeting is unknown at this time, but neither party disputes that it took place in September 2004.

## IV. CONCLUSION

For reasons discussed herein and above, the Court finds that Separate Defendant PACE Local 5-0369's Motion for Summary Judgment should be and hereby is **GRANTED**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 31st day of January, 2007.

/s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge